and we have the third case of Wayne Frazier v. John Varga Mr. Frazier's post-conviction proceedings themselves fairly present his claim to all levels of the Oregon State Courts and the District Court that he received ineffective assistance of counsel when his attorney did not provide him notice that there's a potential he could be serving a sentence double the maximum statute order penalty due to the age of the victim of the case. This is not a new claim that we just came up with here in this court. This was presented by Mr. Frazier, not fully, but by Mr. Frazier in his post-conviction petition. Number four, excuse me, in his motion to supplement his post-conviction petition. Number six, these are all in the short appendix. Then again on his motion for rehearing, pro se motion to rehearing to the Illinois Court of Appeals and then finally in his petition for a week to appeal to the Illinois Supreme Court. This is a claim that he has consistently fairly presented to the state courts. Counsel, where is the clearest signal to the Illinois courts that he's complaining about effectiveness of his counsel? What you have, where we find it is first in the initial circuit court, the motion to supplement post-conviction, you have Mr. Frazier running out, first that he was not put, not given prior notice of the possibility of an extended term had been provided by the state prior to sentencing, and then coupled with petition was never apprised of or done. Notice that he's charged under the extended term sentence. This respectfully, Your Honor, is not the responsibility of the prosecution. This is the, of the court. This is a attorney's core responsibility. You can look at the Lafleur case where it states that attorney's responsibility is to let their client know, among other things, the potential outcomes if they choose to plead to a charge and make sure that they are fully aware of what may or may not happen, have all the information they need to normally voluntarily enter into that plea. Again, this is not our voice. Yes, sir. If I understand this correctly, the state courts are supposed to read the phrase. I'm looking at short appendix 23. Yes. Are supposed to read, this court must decide whether harmless error can be applied to a situation where no prior notice of the possibility of an extended term had been provided by the state prior to sentencing. And they're supposed to read that and realize that it's really an ineffective assistance to the counsel plan. When you couple that with Ben's short appendix, page 25, which is part of the same memorandum, Your Honor, again, my answer is yes, you are. This is, again, not a trained lawyer writing this out. This is the responsibility of the post-conviction counsel to review these pleadings and realize, no, this is not well drafted. But this is a real claim, a meritorious claim that needs to be raised. I'd also suggest in the district court, again, Mr. Fraser very clearly raises this issue, raises this claim, saying that, here we go, just want to make sure I get the language corrected on it, that he was never informed and modestly placed on notice that the state or the court would be seeking to cancel the sentence. Again, it's not the responsibility necessarily of the judge at trial or the prosecutor to inform a defendant. It's a lawyer's job to inform the defendant that this is what he's facing. He's supposed to be told in arraignment, right? Excuse me? He's supposed to be told in arraignment what he's facing? He is supposed to be. But, again, that is the responsibility of the assigned attorney. If he is not provided with that information, or if he is unaware of that information, or if he does not understand that, or to provide that to his client. In this case, Mr. Fraser alleges, and alleges consistently, that did not happen. Can I ask you, we've got first a question on whether these filings were sufficient to put the state courts on notice. I understand you've addressed that. Yes. There's obviously another question that I know you want to get to about whether, in general, supplemental prosecuting filings should be sufficient. Let me just raise my concern with you about this. Yes, sir. When we look at the role of appellate lawyers, generally more in the context of claims that appellate lawyers have been ineffective, we in other courts have made clear repeatedly that part of the lawyer's job is to select issues, including to discard even potentially meritorious issues because there are other stronger issues to raise, right? Yes. My concern is that your position, and frankly the position adopted in our non-presidential Kaiser order, would seem to encourage a practice in which the lawyer picks a handful of the best potential issues, and then the client files a prose supplement in the Illinois state courts with everything else, and with or without help from the lawyer. And under your approach, the state courts would then have to deal with all of those issues. Those non-meritorious exceptions? Yes, sir. I'm sorry. Sorry. Those non-meritorious, what would happen with those meritorious exceptions? Everything presented by the petitioner, by the defendant, and his lawyer, at least if 2254D is going to come into play, right? Yes. As I understand your question, I want to make sure I'm clear. Okay. Yes, the state courts would have to address whatever the counsel is. And again, I'll move on in just a moment. As well as any pro se filings of issues of merit that the pro se petitioner raises. Well, under your theory, the state court would need to deal with any issues on the merits, even in hybrid supplemental pleadings or briefs that are stricter, right? Yes. I don't believe I understand. These were stricter. You were saying the state courts, in essence, were obliged to see an ineffective assistance of counsel claim hidden in these pro se supplemental filings. But that fairly presented the issue to them, and that was their opportunity to fix any potential constitutional error, right? Absolutely. This seems to totally screw up the incentives for appellate practice in criminal cases in Illinois, where the defendant and his lawyer have every incentive to simply flood the state appellate court with everything, everything they can possibly dream of. Except, that's not all of the practice in Illinois. Not yet. But I'm asking about the incentives that would be created if we treat supplemental pro se filings, stricken or not, as sufficient to present fairly federal claims to the state courts. And I would suggest one that is appropriate in Illinois, specifically, under the Illinois system, that's necessary as the appointed counsel on post-conviction appeal, do nothing with these pro se filings. And we go through that in our reply brief. But this is what I wanted to get to in addressing this here, Arthur, is that's not the practice in Illinois. The general practice, at least in Cook County, which is the practice of what happened in Mr. Fraser's case specifically, is that an attorney is presented and then simply is supposed to review these pro se filings and, yes, develop them and, as you said, sift out the meritorious and non-meritorious issues. But that's not what happens. Instead, the attorney does nothing with the pro se filings, and then some years later informs the court that appointed the attorney to review and develop those filings. They're fine as is. Go ahead and vote on them. I have nothing to add. This is exactly what happened in Mr. Fraser's case and what seems to be what is the regular practice in the Illinois courts. So, quite frankly, yes, I understand your question. Not only would you not be flooded with filings from counsel plus supplemental pro se filings, you are now, or Illinois is not now. Illinois generally, not in every circumstance, but generally receives our pro se filings because the post-conviction procedure is initiated by these pro se filings, and then the attorneys do nothing with them. They just stand on them. So I suggest this would at least allow those pro se petitioners who raise meritorious claims to prosecute them. I think there's an additional problem here. Waiver or forfeiture. There was not an ineffectiveness argument of the sort that we're making now raised in the district court. This is the sole ineffective assistance of a trial counsel claim that was raised in the district court. One for failure to bring a motion to reduce the sentence, your client's sentence, and the claim you're raising now is that trial counsel is ineffective for failing to give your client notice of the extended sentence. I disagree with that reading of what was filed in the district court. Well, that's how the district court understood it. And again, I would say to the district court, what's wrong? You know, with all due respect. Can you identify language where you clearly framed this as a strickland claim? Your Honor, well, I'll read to you the language that I suggest does make this claim out, yes. It does not use the language of a strickland, I want to make that clear. It's an apprendee claim. No, respectfully, no, it is not. Mr. Granger wrote in his first round, in his Hades petition, it's a counter-failure to apply a sentence enhancement. He then says he was not appraised nor admonished of the facts. He does not say my counsel did not appraise or admonish me of these facts. That's not enough to put the district court on notice that this is a claim of ineffective assistance of counsel. It would be recognized as a claim that either the statute itself didn't give sufficient notice, perhaps, or that the court didn't give him notice, or that the indictment didn't give him notice. That's not remotely phrased as an ineffective assistance of counsel claim. And this again goes to the issue of the pro se pleadings and how they should be read. This is a man who states over and over to the state court and then to the district court, I was not given the information I needed to choose whether to go to trial or to plead death. There's this extended sentence out there, and that is the responsibility of the trial attorney or the defendant. Is there any evidence here in our record, counsel, that Mr. Frazier was ever willing to consider pleading guilty? There is very little evidence one way or the other. What has he submitted at this point? Besides what we have in the pleadings themselves, which again are written by Mr. Frazier, and most of them are known as John F. Davis, but I do suggest he take that into consideration. You have this letter by his trial counsel that is in the record that is cited in the reply brief as well to the IARDC April 1998 stating, claiming that Mr. Frazier was never offered an eight-year sentence and that he never wanted to pursue an offer. The inference that I suggest should be drawn from that is that some number of years he was offered at some point, if not eight, and whether it was communicated to Mr. Frazier or not, this is what we need an evidentiary hearing for. This is why we are requesting an evidentiary hearing. Well, here's my concern, counsel. The premise of this, in effect, assistance to counsel claim for prejudice is that he would have been prepared to plead guilty. In the district court, he is insisting on his factual innocence, correct? That is correct. I would say, in my own experience at trial, quite frankly, my clients often, up until the moment of the plea, tell me how innocent they are. I would say that's not indicative of actual innocence or not innocence. This is years after conviction. This is where even the federal habeas proceeding is on appeal now. He's insisting on factual innocence. At the same time, you're telling us he was prejudiced because he didn't get a chance to plead guilty on an informed basis. So why should we treat that as a substantial claim for purposes of Martinez and Carino? Because, quite frankly, when a defendant does not know, is not informed by the lawyer who is supposed to represent them going to trial, that he could face double the maximum sentence as opposed to the maximum sentence. That impacts the decision the defendant makes. And I would refer the court to Julian B. Bartley and Morby Bryant that stand very much for that proposition. I understand that in the abstract. I have a little trouble with the fellow who's still insisting he's factually innocent while also asserting this claim. Look, we are not, I mean, up here before this court, we are not raising a claim of innocence at all. I won't get back to raising this claim. But quite frankly, a defendant has a right, respectfully, to pursue multiple avenues of defense. Again, drawing from my own years of the trial practice, that I suggest that's not abnormal. Or, again, I'd also, again, refer to Lappler v. Cooper, which very clearly states that the criminal practice is, majority, a practice of pleas, 90-plus percent, I believe, is what the Supreme Court cited in Lappler, of the number of criminal cases that are resolved through a plea. I see my time is up. I just think it's not the appropriate time.  Thank you. Good morning. May it please the court, I am Assistant Attorney General Eldon Madelon, here today on behalf of Catholic. As the discussion in the appellant's argument indicated, there are several roadblocks blocking him from success on this appeal. But the number one roadblock is that he didn't raise the claim that he now asserts before the district court. Thus, the claim is forfeited. Now, he's arguing that his counsel was ineffective for advising him that he might be subject to an extended term sentence because his victim was over six years of age. And he asserts that he raised it in Claim 1, which is his petition. But as the questions already indicated, Claim 1 did no such thing. Instead, Claim 1 attacked was the sufficiency of the indictment. It quite clearly attacked the notice provided by the indictment. How do we know? Because it specifically cited the Illinois statute indicating what the requirements are of the charging instrument of the indictment. We also know that Petitioner did not raise an ineffective assistance of counsel claim because when he wanted to do so, he could. In Claim 4, he raises an ineffective assistance of counsel. So he knows how to do so when he wants to. In Claim 1, he does something very different. And so the claim was that the claim included no mention of counsel. The claim is forfeited. Very briefly, the claim is also defaulted. It was not raised in the state courts. I just want to briefly clear up one what I think is a factual question, the stricken pro se supplemental briefs. So counsel now is not asserting that the claim he raised was raised on direct appeal in the pro se supplemental briefs that were stricken. He raises some ineffective assistance of counsel claims there, but they were very different claims. The place where he now says the clearest instance of him raising this claim was in one of his amendments to his post-conviction petition. This was never stricken by the court. So if, indeed, it did raise the claim, there's no issue of whether the pro se supplemental briefs on appeal. The court would not need to resolve whether those were somehow preserved issue. So the clearest instance he's pointing to is on one of the amendments to the post-conviction petition. And it, again, indicates just the notice of the charging instrument. Again, how do we know? On the page the petitioner points to, it says the petitioner asserts that the charging instrument did not allege that the complainant was over the age of 60. And it goes on to say, and therefore, there was no prior notice. So the claim there, too, was to the charging instrument. So, Counsel, just so I got this straight, you're telling us we don't need to decide, in essence, the Kaiser issue about supplemental pro se briefs? That's right, Your Honor. In our briefs, we discuss why it was the state court did reject it on independent, say, law ground. But here, this isn't where the petitioner argues he's raising it. He's raising it on the post-conviction petition and one of the amendments to the post-conviction petition. And that wasn't straight. So he filed a whole bunch of amendments. The post-conviction petitioner, the counsel, just went forward with those petition and the amendments. I don't believe that that was over. The Kaiser issue has to do with pro se supplementaries on appeal. The petitioner is not claiming that those were in there. There's a brief mention in one of them of the Apprendi claim. So I guess in theory, if any Apprendi claim were to preserve this claim, the court could reach that issue. But otherwise, there's no reason for the—it's not necessary for the court to reach that issue here. Finally, just with respect to the evidence, there is no evidence the petitioner ever considered plain guilty. If anything, as discussed, there's only the negative assertion that there was no plea agreement, plea offer on the table. Indeed, this evidence was so negligible, I believe that we were the first to raise it, to note it on appeal. So there's no indication that the petitioner ever considered plain guilty. If this court has no further questions, we would ask this court to affirm the judgment of the district court. If we get to Martinez Tribunal, should we decide that issue for the state of Illinois as a whole in this case? Your Honor, the court certainly may have decided on the—for Illinois as a whole, in that Illinois has procedures that allow criminal defendants to raise ineffective assistance of counsel claims post-trial and then to develop the record as necessary post-trial and then to proceed with those claims on appeal. So if there is a rule as applied to the state as a whole, then indeed Illinois would not fit under the narrow circumstance that Martinez Tribunal outlines. We know from Coleman the general rules that post-conviction counsel's conduct cannot form the basis of cause for the cause and prejudice test. Then there's this narrow exception only when it was prohibited or virtually impossible for a petitioner, a criminal defendant, to raise the claim in Illinois. It is far from virtually impossible. There's a whole procedure known as the Krankel procedure in which an initial inquiry and then for a colorable claim, a full-blown evidence-based hearing may take place. And, of course, claims based on the face of the record must be raised on direct appeal. So Illinois does not fit under the narrow exception outlined in Martinez Tribunal. I don't know if you heard the discussion in the last case I made about where the Attorney General referred to a situation in which trial counsel and appellate counsel are the same. Does that happen in Illinois? It's possible it happens, Your Honor. The one thing I know is, first of all, again, Illinois' rule allows for the appointment of separate counsel in these Krankel inquiries. It allows for someone who retained counsel to hire a new counsel post-trial. So all an Illinois criminal defendant who is appointed counsel has to do is raise a claim of ineffective assistance of counsel, and there will be some sort of inquiry at the trial level as to that affiliation. And so even in a circumstance in which trial and appellate counsel are the same, there would have been an opportunity to proceed with those claims had trial counsel, had the criminal defendant simply voiced that concern at post-trial. But, again, needless to say, that's not the case here. So, again, we would ask this Court to affirm the judgment of the district court. Thank you. Thank you, counsel. I'll give you a couple more minutes. Two minutes. Thank you, Your Honor. Appreciate that. Going to the issue of these Krankel hearings, I'll make clear that they are initiated by pro se violence. They are not initiated, at least in the case of an indigent defendant such as Mr. Fraser. They do not allow for going beyond the facts that are on the record. They do not allow for expanding the record, unlike, as I understand from that state, the Wisconsin system does. Illinois state courts have said that the preference is for that very reason to bring these ineffective claims in collateral, post-conviction claims, not on direct appeal. A petitioner, a defendant, is not appointed counsel, an attorney, for a criminal hearing until the court has determined there is a meritorious claim there for counsel to be appointed. If the petitioner doesn't know to raise the effectiveness of their counsel, that claim then is waived and it won't have an attorney appointed to represent them to develop that claim. And again, even if so, in a circumstance such as this where it goes to communication between the lawyer and his client that are not on the trial record, that is not a claim that can or will be raised in such a hearing. So I would suggest Krankel is not a fix or a way around to avoid the issue of criminal respect law. And I would just suggest again, in Mr. Fraser's claim specifically, at every state fact-development stage, he was acting pro se. He did not have counsel appointed to him until after the fact-development stage. So although his pleadings are remarkable, that's why he needed counsel to be appointed to identify whether they were asking for an evidentiary hearing to go back to the house to attempt to develop the record as to what was or was not communicated to him. I see my time is up. Thank you very much. Thank you. Thanks to both counsel and the case committee.